UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY BARCLAY,<br><br>   Petitioner,<br><br>  v.<br><br>KEVIN CHAPPELL, Warden,[1]<br><br>   Respondent. | No. 2:13-cv-1489 GGH P<br><br><br><br>ORDER[2] |

  Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him by way of a guilty plea on August 15, 2012 in the San Joaquin County Superior Court on one charge of grand theft, (Cal. Penal Code §487(a)), with one admitted prior strike. He seeks federal habeas relief on the following grounds: (1) new evidence discovered after the preliminary hearing conflicts with evidence at that hearing, resulting in insufficient evidence for an indictment; and (2) later discovered evidence conflicts with the timeline of the crime and proves petitioner could not have committed the crime. Petitioner has also requested an evidentiary hearing. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

---

[1] The court substitutes Kevin Chappell, the current warden of San Quentin State Prison, as respondent in this matter. See Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994) ("A petitioner for habeas corpus relief must name the state officer having custody of him or her as the respondent to the petition."); Rule 2(a), 28 U.S.C. foll. § 2254).

[2] The parties consented to the undersigned pursuant to 28 U.S.C. § 636(c).

I. <u>BACKGROUND</u>

Petitioner was charged with one count of grand theft of personal property, and one count of receiving stolen property, with allegations of two prior serious felony convictions. (Res't's Lod. Doc. 1 at 1-2.) At the preliminary hearing, held on June 15, 2012, Deputy Rodrigues testified concerning his investigation into two condenser coils missing from Sprint's cell phone tower air conditioning system. (ECF No. 6 at 84.) Deputy Rodrigues first responded to a call on December 5, 2011 from Thomas Karlberg, a service technician for Ericson, Sprint's maintenance company, who had seen that coils were missing on that date when he was called in response to an overheating alarm triggered on December 2, 2011. (<u>Id.</u> at 72, 86-87.) Karlberg reported to the scene on December 5, 2011, for maintenance in response to a work order he received on December 5, 2011. (<u>Id.</u> at 87.) He knew that the coils had been bolted down to the bottom of an air conditioning unit on an exterior wall of the cell tower, which was inside a fenced area. (<u>Id.</u> at 94-96.)

Deputy Rodrigues also spoke with Jimmy Villalobos, who worked for a construction company across the street from the cell tower, who witnessed a gold car parked near the perimeter of a gate surrounding the area where the tower was on December 2, 2011. (<u>Id.</u> at 75, 89.) The car was parked there for about an hour. (<u>Id.</u> at 89.) Villalobos saw a man carrying a large piece of metal that looked like a radiator from the area. The man tried to put it in the trunk of his car, and when it did not fit, he put it in the back seat. (<u>Id.</u> at 75-76, 90.) The man's pants were ripped in the inner thigh area. (<u>Id.</u> at 78, 107.) Mr. Villalobos took a photo of the man and the car and sent it to Deputy Rodrigues. (<u>Id.</u> at 79.)

Deputy Rodrigues then identified petitioner's mother, Juanita Barclay, as the registered owner of the vehicle. When he interviewed her, she identified the man in the photo as petitioner, and stated that he used her car. (<u>Id.</u> at 79-80.) She later said that she could not positively say it was her son or her car.[3] (<u>Id.</u> at 90.) According to Deputy Rodrigues' testimony at the preliminary

---

[3] The police report does not state that Juanita Barclay positively identified petitioner and the car, but stated only that "she could not positively say if that was her son or not. She did state the vehicle looked like hers, but she could not make out the license plate from the photos." (ECF No. 6 at 54.)

hearing, Ms. Barclay also said that she witnessed petitioner "carrying some type of large metal object" on December 12, 2011; however, the officer was asked to look at page three of the police report, first full paragraph, third line. (Id. at 80-81.) The report itself at that page cite discusses the officer's conversation with Sonia Villa, not Juanita Barclay. (Id. at 56.) The officer's recollection may have been confused on this point. The police report states that petitioner's mother told the officer that petitioner had never brought any "type of metal or recyclable stuff to her residence." (Id. at 54.)

A neighbor of petitioner, Sonya Villa, did identify petitioner from the photograph. (Id. at 90-91.) She also told the deputy that she had seen petitioner carrying a large metal square object on December 12, 2011, and that petitioner commonly recycles. (Id. at 100, 102.) Deputy Rodrigues then interviewed petitioner who acknowledged that he was the person in the photo taken by Mr. Villalobos, and that the car was his mother's car. (Id. at 81.) When the officer asked him what he was doing in the photo, he responded that he had stopped to urinate by the side of the road and that he found two metal objects on the side of the road. (Id. at 81-82.) He stated that he took them to recycle them. (Id. at 82.) The deputy searched petitioner's apartment and did not find the large pieces of metal as they were already recycled according to petitioner, but did find "lots of tools." (Id. at 82-83.) Deputy Rodrigues also testified that in 2011, petitioner had undergone three months of training as an employee for Ericson, the company that managed the cell towers for Sprint, and that service technician Thomas Karlberg worked for. (Id. at 105.)

Petitioner pled no contest to the one count of grand theft on August 15, 2012, admitting to one of two prior strikes. (Res't's Lod. Doc. 1 at 2-3, 12-13.) The stipulated factual basis provided at the plea hearing was as follows:

> December 2nd, 2011, in French Camp, California, San Joaquin County, the defendant took a condenser coil that was located on a cell tower, cell phone tower, that was owned by Sprint. There was 5,024 – the coil itself was worth 5,024 dollars. And the amount of damage caused in taking the coil was 4,133 dollars and 61 cents, for a total of 9,157 dollars and 61 cents.

(Id. at 20.)[4] Petitioner was sentenced to four years in prison, plus restitution in the amount of

---

[4] The entire remainder of the record and the evidence refers to two condenser coils.

3

$9,157.  (Id. at 21-22.)  A term of the plea agreement was that petitioner agreed to waive his right to appeal.  (Id. at 22.)

Petitioner did not appeal.  On October 29, 2012, petitioner filed a habeas petition with San Joaquin County Superior Court.  In a decision issued November 13, 2012, that court noted petitioner's claim of "insufficient evidence presented at his preliminary hearing to sustain an indictment," and his claim "that he obtained evidence after the preliminary hearing that contradicts testimony from the preliminary hearing."  (Res't's Lod. Doc. 2 at 28.)  Nevertheless, the court found that because petitioner pled "nolo contendere" in exchange for a specific sentence, he could not utilize the appeals process.  Therefore, the court found that he had "failed to set forth sufficient facts to merit habeas corpus relief."  (Id.)  Petitioner's habeas petition filed with the California Court of Appeals was denied on December 13, 2012 without comment or citation. (Res't's Lod. Doc. 3.)  On March 13, 2013, the California Supreme Court denied petitioner's habeas petition without comment or citation.  (Id., Doc. 8.)  Petitioner filed the instant federal habeas petition on July 24, 2013.[5]  (ECF Nos. 1, 6.)

## II. DISCUSSION

### A. AEDPA Standard of Review

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[5] The court has also considered the various "addendums" filed in this case.  See ECF Nos. 4, 8.

4

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S. Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004).

Accordingly, "a habeas court must determine what arguments or theories supported or … could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

/////

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct. 969, 974 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 131 S. Ct. at 786-787. "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S. Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S. Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early, supra, 537 U.S. at 8, 123 S. Ct. at 365.

Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

If the state courts have not adjudicated the merits of the federal issue, no AEDPA deference is given; the issue is reviewed de novo under general principles of federal law. Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012).  However, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___, 133 S. Ct. 1088, 1091 (2013).

B.  Petitioner's Claims

1.  Whether new evidence discovered after the preliminary hearing conflicts with evidence at that hearing, resulting in insufficient evidence for an indictment[6]

Petitioner first asserts that newly discovered evidence would have changed the result of the preliminary hearing if it had been known, and an indictment would not have been possible. This "new" evidence is a one page document which petitioner has labeled "suepona'd  Sprint site alarm record." (Petitioner's Ex. B; ECF No. 6 at 48.)  Petitioner further claims that the prosecution suppressed this evidence, thus forcing petitioner to plead guilty.

The law is clear that petitioner may not raise claims of deprivation of his constitutional rights that occurred prior to his plea. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the

---

[6]  Petitioner's Ground Two is essentially a repeat of the claims raised in Ground One, with additional evidence in support.  Ground Two states: "[p]reliminary transcripts and later evidence conflict on the date of the crime.  Police report conflicts with police test[i]mony.  Defense investigator report interview with Jeff Bennifield proves defendant could not have done the crime.  The 'timeline' does not match the evidence." (ECF No. 6 at 7.)  Therefore, all of petitioner's argument and recited evidence raised by Ground Two have been combined into the first claim and will be addressed together.

entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). See also McMann v. Richardson, 397 U.S. 759, 770-71 (1970); Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994) ("As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations"), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992) ("petitioner's nolo contendere plea precludes him from challenging alleged constitutional violations that occurred prior to the entry of that plea"); Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir. 1985) (voluntary and intelligent guilty plea precludes federal habeas relief based upon "independent claims" of pre-plea constitutional violations); United States v. DeVaughn, 694 F.3d 1141, 1153 (10th Cir. 2012) ("A guilty plea waives all defenses except those that go to the court's subject-matter jurisdiction and the narrow class of constitutional claims involving the right not to be haled into court").

Petitioner not only argues that this "new" evidence would have exonerated him at the preliminary hearing, but he also asserts that the prosecutor knowingly suppressed this evidence and proceeded with a three strikes enhancement, "forcing defendant into a Nolo Contendere plea and accepting a 4 year deal." (ECF No. 1 at 28.) Therefore, this claim will proceed as a Brady claim.

A Brady violation occurs where the prosecution withholds evidence that is material and favorable to the defendant. Brady, 373 U.S. at 87-88. Materiality exists where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433, 115 S. Ct. 1555, 1565 (1995) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985)).

As posited by respondent, petitioner's challenge based on a Brady[7] violation has no merit here, where petitioner's own exhibits reflect that the Sprint document produced in response to a subpoena requested by the San Joaquin County Public Defender, was produced to the court, not to the District Attorney.[8]  (ECF No. 6 at 48-49, 62-67.) Therefore, to the extent the court or

---

[7] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).

[8] Petitioner makes a claim in his traverse that his Exhibit B (the Sprint work order), was not

petitioner's own attorney, and not the prosecutor, may have delayed in producing this document to petitioner, Brady does not apply.  Brady, 373 U.S. at 87-88 (holding that the *prosecution* violates due process by withholding evidence that is material and favorable to the accused) (emphasis added).

Even if the Sprint evidence presented here by petitioner had been suppressed by the prosecution rather than somehow withheld by the court or petitioner's attorney, there is still the question of whether Brady disclosures are required outside the context of a trial.  The Supreme Court has yet to address whether the Due Process Clause requires such disclosures prior to entry of a guilty plea.  McCann v. Mangialardi, 337 F.3d 782, 787 (7th Cir. 2003).  In United States v. Ruiz, 536 U.S. 622, 629, 122 S. Ct. 2450, 153 L.Ed.2d 586 (2002), the Supreme Court did hold that withholding of impeachment material did not give rise to a cognizable Brady claim in the context of a guilty plea.  Exculpatory material should be treated no differently for Brady purposes.  In United States v. Bagley, 473 U.S. 667, 105 S. Ct. 3375 (1985), the Supreme Court specifically rejected any distinction between exculpatory and impeachment evidence, finding them both to fall within Brady as "evidence favorable to an accused."  Id. at 676, quoting Brady, 373 U.S. at 87, 83 S. Ct. at 1196, and citing Giglio v. United States, 405 U.S. 150, 154, 92 S. Ct. 763, 766 (1972).  Although McCann interpreted Ruiz to suggest in dicta that withheld exculpatory, as opposed to impeachment evidence, could give rise to a due process violation, 337 F.3d at 787, this court draws no such inference and relies on the Supreme Court's express finding in Bagley.  Cf. Torres v. Prosper, 2008 WL 6665286, * 8 (E.D. Cal. Dec. 12, 2008) (discussing potential distinction between exculpatory and impeachment evidence in regard to guilty plea).

Therefore, in light of Ruiz and Bagley, whether the evidence proffered by petitioner is viewed as exculpatory or impeachment material, petitioner's Brady claim fails.  It is clearly established that the constitution does not require disclosure of impeachment information prior to a guilty plea, and it is also clearly established that exculpatory information is to be treated in the

---

produced to the court through the proper procedure but was produced to the District Attorney and withheld from him until two days before trial.  Petitioner has provided nothing but assertions to support this argument.  (ECF No. 20 at 4-6.)

1 same manner. Since <u>Bagley</u>, the Supreme Court has not determined that <u>Brady</u> requires
2 disclosure of exculpatory evidence before entry of a guilty plea. Therefore, the state court's
3 decision was not contrary to, or an unreasonable application of, clearly established federal law.

4     Petitioner's claim fails on the merits also. <u>See</u> <u>Torres</u>, 2008 WL 6665286 at *9 (citing
5 <u>Sanchez v. United States</u>, 50 F.3d 1448, 1453 (9th Cir. 1995)). "Petitioner must show that
6 exculpatory material was not disclosed and a reasonable probability exists that, but for the failure
7 to disclose, he would have refused to plead and instead would have gone to trial. The test for
8 whether petitioner would have chosen to go to trial is an objective one that centers on the likely
9 persuasiveness of the withheld information." <u>Torres</u>, at *9 (citation omitted).

10     The document claimed to be new evidence states, "service being dispatched for 12/5 due
11 to class 2," and thus appears to be a work order for service. It indicates a high temperature on
12 December 4, 2011. (Petitioner's Ex. B; ECF No. 6 at 48.) This document is not authenticated.
13 <u>See</u> Fed. R. Evid. 901(a) (a prerequisite to admissibility is that "the proponent must produce
14 evidence sufficient to support a finding that the item is what the proponent claims it is"). The
15 document also does not state when the alarm went off, but only refers to a "high ambient
16 temperature" on December 4th. Petitioner argues that it indicates that he could not have
17 committed the crime because the witness saw the car and petitioner[9] at the Sprint Site on
18 December 2, 2011, not December 4, 2011, when he claims the alarm actually went off. The
19 document itself does not support this argument, however. It states nothing whatsoever about the
20 alarm and what date it was activated. It merely indicates a high temperature on December 4th.
21 Petitioner has provided no other evidence indicating when the alarm was set off. The evidence
22 presented at the preliminary hearing was that the service technician did not go to the scene to
23 discover the missing condenser coils until December 5, 2011, but that the alarm was set off on
24 December 2, 2011. <u>See</u> preliminary facts *supra* and discussion *infra*.

25     Petitioner concedes that documents produced by Sprint in response to a subpoena,
26 including this document now presented by petitioner, were provided to petitioner on August 8,

---

[9] The petition seems to concede that petitioner's photo was taken at the scene on December 2, 2011. (ECF No. 1 at 25.)

2012, one week prior to his plea of no contest on August 15, 2012.[10]  (ECF No. 6 at 49.) Elsewhere in his argument, however, petitioner contends that this evidence was suppressed by the deputy district attorney until August 8, 2012, two days before petitioner accepted the plea agreement and two days before the scheduled trial date.  (Id. at 27; ECF No. 20 at 4-6.)  Aside from the fact that petitioner has produced nothing more than allegations that the prosecution suppressed this evidence, whether this precise document was presented to petitioner a week before his plea or two days before his plea, the fact remains that he was aware of it before he pled no contest, and certainly aware of the same facts at the time of the preliminary hearing as this document does not contradict the fact that the alarm went off on December 2, 2011 because it does not address that point.  Therefore, this document is not material or even exculpatory.

In addition to the aforementioned Sprint documents, petitioner argues that a police report refers to Thomas Karlberg's statement to Deputy Rodrigues on December 5, 2011, that "the heating had gone off yesterday," referring to December 4th. (Petitioner's Addendum 1, Ex. D, ECF No. 6 at 59.)  Petitioner argues that this statement proves he did not do this crime because he was not at the scene on December 4th, when the heat alarm went off.  Petitioner draws an inference that is refuted by the other evidence, however.  The alarm went off on December 2, 2011. (ECF No. 6 at 72, 86-87.)  Karlberg reported to the scene on December 5, 2011, to start maintenance, and in response to a work order issued on that date.  (Id. at 48, 87.)  Karlberg told Deputy Rodrigues that the alarm went off on December 2nd between 2:30 and 3:30.  He told Rodrigues that the overheating triggers the alarm, not the actual removal of the condensers.  (Id. at 86-87.)  He did not go to the site until December 5th because he does not respond until he receives a work order.  (Id.)  Petitioner's "new" evidence does not reference when the alarm was triggered because it appears to have been generated in regard to the work order only.

Petitioner's other exhibit is not relevant to his Brady claim.  Exhibit E is an Investigation Report completed by the Public Defender's investigator after a conversation he had with Jeff

---

[10] Under California law, a plea of nolo contendere has the same effect as a plea of guilty.  See, e.g., People v. West, 3 Cal.3d 595 (1970).  Accordingly, federal constitutional principles governing guilty pleas apply to petitioner's claims in the instant case.  Miller v. McCarthy, 607 F.2d 854, 856 (1979).

1  Benefield, an individual presumably familiar with condenser coils in cell phone towers and
2  possibly an expert. According to the defense investigator's report, dated August 8, 2012, Mr.
3  Benefield stated that it would take an average of 1-10 hours or possibly 24 hours from the time a
4  cell phone tower is overheated after condenser coils have been removed until an alarm is
5  sounded. (ECF No. 6 at 61.) This range is based on the time of day and the temperature outside.
6  (Id.) This opinion is equivocal in regard to petitioner's position but supports Deputy Rodrigues'
7  report that the alarm could have sounded on December 2, 2011, within a very few number of
8  hours after the condenser coils were taken. Nevertheless, it cannot be the subject of a Brady
9  claim because it is not material which the prosecution possessed and failed to turn over to the
10 defense, but rather a report created by petitioner's own investigator.

11      Petitioner further contends that the "new" evidence shows he did not do this crime
12 because he was not at the scene on December 4th, when he argues the alarm and/or heat went off.
13 Petitioner did argue that he "could not have committed this crime" before the state supreme court,
14 which can be construed as an actual innocence claim. See Res't's Lod. Doc. 7, Ex. E. However,
15 such a claim fails for the following reasons.

16      First and foremost, a claim of actual innocence is a direct contradiction to a guilty plea
17 and is therefore barred by Tollett. Sullivan v. Benedetti, 2013 WL 4432399, *6 (D. Nev. 2013);
18 Lee v. Almager, 2011 WL 2882148, *15 (C.D. Cal. Jun. 7, 2011) (barring consideration of actual
19 innocence claim as barred by Tollett, and citing Hernandez v. Mendoza-Powers, 2005 WL
20 2089807, at *5 (E.D. Cal. Aug. 29, 2005); Alvarez v. Blevins, 2012 WL 3133825, *3 n. 5 (C.D.
21 Cal. Jan. 24, 2012) (noting preclusive effect of Tollett on actual innocence claims). Since this
22 report was provided to petitioner's counsel on August 8, 2012, prior to August 15, 2012 when
23 petitioner entered a plea of no contest, Tollett precludes a claim based on this report.

24      Even if such a claim could be considered, the standards required to prove actual innocence
25 set an unreachable hurdle for this petitioner. In Herrera v. Collins, 506 U.S. 390, 113 S. Ct. 853,
26 122 L.Ed.2d 203 (1993), a majority of the Supreme Court assumed, without deciding, that a
27 freestanding claim of actual innocence is cognizable under federal law. In this regard, the court
28 observed that "in a capital case a truly persuasive demonstration of 'actual innocence' made after

1  trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief
2  if there were no state avenue open to process such a claim." 506 U.S. at 417.  A different
3  majority of the Supreme Court explicitly held that a freestanding claim of actual innocence is
4  cognizable in a federal habeas proceeding.  Compare 506 U.S. at 417 with 506 U.S. at 419, 430–
5  37.  See also Jackson v. Calderon, 211 F.3d 1148, 1165 (9th Cir.2000) (noting that a majority of
6  the Justices in Herrera would have found a freestanding claim of actual innocence).  Although the
7  Supreme Court did not specify the standard applicable to this type of "innocence" claim, it noted
8  that the threshold would be "extraordinarily high" and that the showing would have to be "truly
9  persuasive." Herrera, 506 U.S. at 417.  More recently, the Supreme Court declined to resolve
10 whether federal courts may entertain independent claims of actual innocence but concluded that
11 the petitioner's showing of innocence in the case before it fell short of the threshold suggested in
12 Herrera.  House v. Bell, 547 U.S. 518, 554–551, 126 S. Ct. 2064, 165 L.Ed.2d 1 (2006).  Finally,
13 the Supreme Court has recently once again assumed, without deciding, that a federal
14 constitutional right to be released upon proof of "actual innocence" exists.  District Attorney's
15 Office for Third Judicial Dist. v. Osborne, ––– U.S. ––––, 129 S. Ct. 2308, 174 L.Ed.2d 38
16 (2009).  In doing so, the Supreme Court noted that it is an "open question" whether a freestanding
17 claim of actual innocence exists and that the court has "struggled with it over the years, in some
18 cases assuming, arguendo, that it exists while also noting the difficult questions such a right
19 would pose and the high standard any claimant would have to meet." 129 S. Ct. at 2321.

20         The Ninth Circuit Court of Appeals has likewise assumed that freestanding innocence
21 claims are cognizable in both capital and non-capital cases and has also articulated a minimum
22 standard of proof in order for a habeas petitioner to prevail on such a claim.  Carriger v. Stewart,
23 132 F.3d 463, 476 (9th Cir.1997) (en banc).  Under that standard "[a] habeas petitioner asserting a
24 freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must
25 affirmatively prove that he is probably innocent." Id. at 476–77.  See also Jackson, 211 F.3d at
26 1165.  The petitioner's burden in such a case is "extraordinarily high" and requires a showing that
27 is "truly persuasive." Carriger, 132 F.3d at 476 (quoting Herrera, 506 U.S. at 417).
28 /////

13

1    Assuming arguendo that a freestanding claim of actual innocence may be maintained in
2    this non-capital case, for the reasons addressed above, petitioner has failed to make the showing
3    required to entitle him to federal habeas relief. Additionally, as respondent points out, petitioner
4    admitted to Deputy Rodrigues that he was the person in the photo taken by Villalobos, that he
5    took two "large metal objects" from the scene for recycling, and that "they were just sitting
6    there."[11]  (ECF No. 6 at 81-82, 108.)  Petitioner has not made any showing that would counter—
7    or even cast the slightest doubt on—the abundant evidence presented at his preliminary hearing
8    pointing to petitioner's guilt of the crimes charged, as amply recounted in the preliminary hearing
9    transcript and other evidence, including petitioner's own evidence, reviewed by this court. Any
10   claim of actual innocence should therefore be rejected as well.

11   In his addendum filed September 24, 2013, (ECF No. 8), petitioner characterizes the same
12   alleged failure to provide the aforementioned documents until August 8, 2012 as a claim that
13   petitioner's plea was not voluntary. He claims that because the aforementioned information was
14   not turned over until two days before the trial date, petitioner did not have time to mount an
15   affirmative defense and was forced to plead no contest. (Id.)

16   First, a new claim may not be raised in an addendum. See Johnson v. Allison, 2014 WL
17   242015, *3 (E.D. Cal. Jan. 22, 2014) (noting impropriety of raising new issues or claims in a
18   traverse, and that court may decline to consider them) (citing Capoperdo v. Demosthenes, 37 F.3d
19   504, 507 (9th Cir. 1994). Nevertheless, because respondent took the opportunity to respond to
20   this claim, (ECF No. 15 at 12), respondent will not be prejudiced by the court's consideration of
21   it. Furthermore, because this alleged new claim merely relies on the factual predicate of the
22   claims presented in the petition, it will be addressed briefly.

23   The undersigned has already addressed the issue of whether the Supreme Court has
24   recognized a Brady claim, which is essentially a claim, in the context of an attack on a plea, that
25   the guilty plea is not knowing or voluntary. That ends the question in this petition. But again, the

26

---

27   [11] Deputy Rodrigues' report states that petitioner admitted "finding the radiator type condenser coil near the location of occurrence, but denied stealing them," demonstrating his inconsistent
28   stories then and now. (ECF No. 6 at 58.)

undersigned will review the claim on its merits as well.

It is clearly established federal law that a guilty plea must be knowing, intelligent and voluntary. Brady v. United States, supra; Boykin v. Alabama, 395 U.S. 238, 242 (1969). The record must reflect that a criminal defendant pleading guilty understands, and is voluntarily waiving, his rights to the privilege against compulsory self-incrimination, to trial by jury and to confront one's accusers. Boykin, 395 U.S. at 243. However, "beyond these essentials, the Constitution 'does not impose strict requirements on the mechanics of plea proceedings.'" Loftis v. Almager, 704 F.3d 645, 648 (9th Cir. 2012) (quoting United States v. Escamilla-Rojas, 640 F.3d 1055, 1062 (9th Cir. 2011). See also Wilkins v. Erickson, 505 F.2d 761, 763 (9th Cir. 1974) (specific articulation of the Boykin rights "is not the *sine qua non* of a valid guilty plea."). Rather, if the record demonstrates that a guilty plea is knowing and voluntary, "no particular ritual or showing on the record is required." United States v. McWilliams, 730 F.2d 1218, 1223 (9th Cir. 1984). The long-standing test for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Parke v. Raley, 506 U.S. 20, 29 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it." Brady, 397 U.S. at 749. A prisoner who has pled guilty may attack only the voluntary and intelligent character of his guilty plea in habeas proceedings. Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992).

In Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court addressed the presumption of verity to be given the record of plea proceeding when the plea is subsequently subject to a collateral challenge. While noting that the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 431 U.S. at 74. A guilty plea is presumed valid in habeas proceeding when the pleading defendant was represented by counsel. Marshall v. Lonberger, 459 U.S. 422, 437

15

1  (1983).

2      In this case, petitioner's only argument in support of his contention that his plea was not
3  voluntary is that he received information which would have aided him in mounting a defense at
4  trial, but that he only received it two days before the scheduled trial date.  Contrary to petitioner's
5  assertion, the information raised by the petition was presented to petitioner *before* he entered his
6  plea, and it was provided seven days before he pled no contest.

7      In all other respects, petitioner's no contest plea was knowing, intelligent and voluntary.
8  The state court record in this case indicates that petitioner was represented by counsel at his plea
9  hearing.  (Res't's Lod. Doc. 1 at 16.)   He waived his rights to a speedy trial and to a trial by jury,
10 the right to confront all witnesses against him, the right to offer evidence on his behalf at a trial,
11 his right against self-incrimination, and his right to appeal.  (Id. at 18-19, 22.)  Petitioner affirmed
12 that he was entering his plea voluntarily, that no one had threatened him or promised him
13 anything in return, other than what was explained on the record.  (Id. at 19.)  Although petitioner
14 at one point requested to plead to possession of stolen property as opposed to grand theft, the
15 court explained that the District Attorney had not made such an offer, and that petitioner would be
16 pleading to grand theft, and admitting one strike for sentencing purposes.  (Id. at 18-19.)
17 Petitioner then agreed to this offer.  (Id. at 21.)  The Deputy District Attorney read the factual
18 basis, as set forth *supra*, and petitioner, through counsel, agreed to it.  (Id. at 20-21.)  This is
19 sufficient for purposes of federal habeas review.  Lonberger, 459 U.S. at 436.

20     The denial in state court of this claim was not unreasonable.  Therefore, this claim should
21 be denied.

22     C. Evidentiary Hearing

23     In his traverse, petitioner has requested an evidentiary hearing.  In Cullen v. Pinholster,
24 ___ U.S. ___, 131 S. Ct. 1388 (2011), the United States Supreme Court held that federal review
25 of habeas corpus claims under § 2254(d)(1) is "limited to the record that was before the state
26 court that adjudicated the claim on the merits."[12]  131 S. Ct. at 1398.  Therefore, evidence

---

[12] Even where a claim for habeas relief is simply summarily denied by the state court on the merits without discussion or analysis, as was the case in Pinholster, the federal habeas court is

1  introduced at an evidentiary hearing in federal court may not be used to determine whether a state
2  court decision on the merits of a petitioner's habeas claim violates § 2254(d).  Id.  Following the
3  decision in Pinholster, the holding of an evidentiary hearing in a federal habeas proceeding is
4  futile unless the district court has first determined that the state court's adjudication of the
5  petitioner's claims was contrary to or an unreasonable application of clearly established federal
6  law, and therefore not entitled to deference under § 2254(d)(1), or that the state court
7  unreasonably determined the facts based upon the record before it, and therefore deference is not
8  warranted pursuant to § 2254(d)(2).

Here, this court has already determined that the state court's decision was not contrary to or an unreasonable application of clearly established federal law.  Nor was it an unreasonable determination of the facts.  Therefore, petitioner's request for an evidentiary hearing is denied.

III.  CONCLUSION

For all of the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's request for an evidentiary hearing is denied.

2. Petitioner's application for a writ of habeas corpus be denied; and

3. No certificate of appealability shall issue.

Dated: March 10, 2014

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:076/Barc1489.hc

---

still ordinarily limited to consideration of the record that was before the state court. 131 S. Ct. at 1402 ("Section 2254(d) applies even where there has been a summary denial.").